UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CR-423-1FL
NO. 5:19-CR-423-3FL
NO. 5:19-CR-423-4FL
NO. 5:19-CR-423-5FL.

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| EBENEZER YEBOAH ASANE | ) |
| a/k/a "Ben" | ) |
| JAMES ERNEST EKOW ARTHUR | ) |
| ERNEST ATTA GYASI | ) |
| SAMUEL MANU AGYAPONG | ) |
| a/k/a "Sammy Tuga", "AG" | ) |

**S U P E R S E D I N G**
**I N D I C T M E N T**



## General Allegations

At all times relevant to this Indictment:

1.    The Immigration and Nationality Act (INA) governs the immigration

laws of the United States.

2.     Pursuant to the INA, foreign-born nationals are not permitted to permanently reside in the United States unless they were lawful permanent residents.

3.     Under the INA, a foreign-born national who is married to a United States citizen can obtain lawful permanent resident status in the United States if the marriage was entered into in good faith; and the United States citizen did not enter into the marriage in exchange for something of value, such as money; and the United States citizen did not enter into the marriage for the purpose of enabling the foreign national to obtain legal permanent resident status in the United States.

4.     The United States Citizenship and Immigration Services (USCIS) is an agency of the United States Department of Homeland Security and is charged with processing applications for immigration benefits such as lawful permanent residence.

5.     A foreign-born national who is seeking to become a lawful permanent resident of the United States on the basis of marriage to a United States citizen is required to complete and submit to the USCIS an Application to Register Permanent Residence or Adjust Status (Form I-485). The foreign-born national is required to sign the Form I-485 certifying, under penalty of perjury, that the information provided by the foreign-born national, including information about the foreign-born national's spouse, is true and correct and that the foreign-born national is admissible to the United States pursuant to the INA.

6.     In order for a foreign-born national to obtain permanent resident status on the basis of marriage to a United States citizen, the United States citizen spouse

2

is required to file a Petition for Alien Relative (Form I-130) on behalf of the foreign-born national. In the Form I-130, the spouse is required to certify that he or she is in fact a United States citizen, to provide certain background information about the marriage (such as the location of the marital residence) and to certify that the marriage was not entered into for purposes of evading immigration laws. Additionally, certain supporting documentation is also required to be submitted contemporaneously with the Form I-130, to include, but not limited to, a copy of the marriage certificate, and Biographic Information (Form G-325).

7.      Upon receipt of the Form I-485 and the Form I-130, the USCIS begins an official proceeding to determine whether to grant the petition. A Report of Medical Examination and Vaccination Record (Form I-693) and an Affidavit of Support (Form I-864) on behalf of the foreign-born national are also required to be filed with the USCIS to ensure that the foreign-born national has no communicable diseases, and will not become a public charge in the United States.

8.      As part of the official proceeding, the USCIS conducts interviews with the foreign-born national and the United States citizen spouse in order to determine the validity of the claimed marriage.

9.      If a foreign-born national's application is approved by the USCIS, the foreign-born national is accorded "conditional" lawful permanent resident status for a period of two years. Generally, within 90 days of the two year anniversary of the issuance of conditional lawful permanent residence, the foreign-born national and United States citizen file a Petition to Remove Conditions on Residence (Form I-751)

3

with the USCIS to remove the conditional status of the foreign-born national. The foreign-born national and the United States citizen must establish that the marriage was entered into in good faith. A marital interview is conducted at USCIS's discretion.

10.    If and when the Form I-751 is approved, the conditions of the foreign-born national's residence are removed, resulting in unconditional lawful permanent residence status. This status authorizes the foreign-born national to permanently reside and lawfully work in the United States.

11.    Aliens who seek to marry United States citizen soldiers for the purpose of obtaining lawful permanent residence do so because soldiers are in a unique environment which USCIS and the Department of Defense (DOD) place an emphasis on expediting the process. Further, aliens who seek an immigration benefit, such as lawful permanent residence, know soldiers receive a Basic Allowance for Housing (BAH) stipend typically in the form of $1000.00 (or higher depending on location) a month so that the soldier can live off post as opposed to living in their assigned barracks room. Married Soldiers also receive additional pay based on deployments to include Family Separation Pay. In some cases, the facilitator will encourage the soldier to claim their spouse is living in an area with a higher BAH rate such as New York City; New York City's BAH rate is nearly three times higher than Fayetteville, NC.

12.    Soldiers who get married, regardless to an alien or civilian, are required to enroll their newly acquired spouses in the Defense Enrollment Eligibility

4

Reporting System (DEERS). This allows the spouse access to DOD issued Identification Cards, which allow them on any military installation, the ability to utilize military aircraft to fly (from installation to installation), access to health care at any military installation and/or civilian care provider that accepts TRICARE health insurance, and other benefits.

13.    For purposes of this conspiracy, there are three general roles that apply.

a. The first role is the non-immigrant alien. He or she wants to illegally immigrate to the United States or stay in the United States by fraudulent adjustment of his/her immigration status. The alien needs to find a sham petitioner willing to marry the alien, either through his or her own accord, or through the assistance of a facilitator.

b. The second role is the facilitator. The facilitator is the leader of the conspiracy. He or she plans, organizes, and profits the most from the success of the illegal scheme. The facilitators provide assistance in the country of origin, transit countries, and in the United States. Some examples of services provided and profited by facilitators are employers, landlords, persons acting as legal counsel, public notaries, money remitters, translators, tax preparers, and money launderers.

c. The third role is the support. The most common example under the support role is a United States citizen who is recruited to act as a sham spouse for the alien. The sham spouse is paid money, usually in increments, for following through with each step of the adjudication process described above. Another example of support is a person who provides an Affidavit of Financial Support [Form I-864]. In some instances, the support role may be conducted by an unwitting citizen.

14.    The defendant, EBENEZER YEBOAH ASANE a/k/a "Ben," (hereinafter "ASANE") was born in Ghana, and is a Naturalized United States citizen.

15.    Individual S.S.S., (hereinafter "S.S.S.") was a foreign born national, formerly residing in Boston, Massachusetts.

16.    The defendant, JAMES ERNEST EKOW ARTHUR, (hereinafter "ARTHUR") was a foreign born national, currently residing in El Paso, Texas.

17. The defendant, ERNEST ATTA GYASI, (hereinafter "GYASI") was born in Ghana, and is a Naturalized United States citizen, currently residing in Brooklyn, New York.

18. The defendant, SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga", "A.G.", (hereinafter "AGYAPONG") was born in Ghana, and is a Naturalized United States citizen, was residing in Fayetteville, North Carolina, and a member of the United States military.

19. The defendant, ██████████████████████ ████████ was a United States citizen, and a member of the United States military.

20. The defendant, ██████████████████████████ was born in Ghana, and was a nonimmigrant visitor for pleasure authorized to remain in the United States for a period not to exceed ████████

21. The defendant, ██████████████████████ was born in Nigeria, had an immigration status of a nonimmigrant student and resided in ████████

22. The defendant, ██████████████████████████ was born in Ghana, had the immigration status of Lawful Permanent Resident, and resided in the ████████

23. The defendant, ██████████████████████ (hereinafter ████████ was a United States citizen, and a member of the United States military.

6

24.   The defendant, ███████████████████████████████ was a United States citizen, and member of the United States military.

25.   The defendant, ███████████████████████████████ ████ was born in Ghana, is a citizen of the ████████ and resided in ███ ████ ████████████ had an immigration status of a nonimmigrant visitor for pleasure and was authorized to remain in the United States for a period not to exceed ████████

26.   Individual J.L.T. (hereinafter "J.L.T.") is a United States citizen.

27.   Individual A.M.L. (hereinafter "A.M.L.") is a United States citizen.

28.   Undercover Officer 1 and Undercover Officer 2 are United States Citizens.

## COUNT ONE

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

Beginning in or around April of 2019 and continuing through on or about the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben," JAMES ERNEST EKOW ARTHUR, ERNEST ATTA GYASI and individual S.S.S., did knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit certain offenses against the United States in violation of Title 8, United States Code, Section 1325(c), that is, to knowingly enter into a marriage for the purpose of evading provisions of the immigration laws.

7

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, along with others known and unknown to the Grand Jury, to induce United States citizens to enter into sham marriages with foreign-born nationals for the purpose of evading United States immigration laws and obtaining lawful permanent residence status for otherwise inadmissible foreign-born nationals.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, and their co-conspirators, sought to accomplish the purpose of the conspiracy included, among other things, the following:

Defendant, EBENEZER YEBOAH ASANE, a/k/a "Ben" induced Undercover Officer 1 ("UC1"), a member of the United States military, to enter into a fraudulent marriage with a foreign born national. The purpose of the marriage was to fraudulently qualify S.S.S., for immigration benefits, including lawful permanent resident status in the United States.

It was further part of the conspiracy that the defendants, ASANE and S.S.S., would prepare and submit immigration applications and supporting documentation on behalf of S.S.S. and UC1 to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

8

It was further part of the conspiracy that UC1, once married to S.S.S., would apply for and receive Basic Allowance for Housing (BAH) and Basic Allowance for Subsistence (BAS) from the United States military, benefits that UC1 would not normally be entitled to without being married.

It was further part of the conspiracy, that UC1 was solicited by defendant ASANE to find other United States citizens that would be amenable to engaging in sham marriages to foreign nationals for the purpose of obtaining lawful permanent resident status for the foreign national and BAH and BAS for the military member. UC1 introduced Undercover Officer 2 ("UC2") to ASANE.

Defendant, ASANE facilitated the sham marriage between UC1 and S.S.S. and UC2 and ARTHUR in Cumberland County, North Carolina.

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish the purpose and object thereof, the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben," JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, and co-conspirators did commit, and cause to commit, among others, at least one of the following overt acts:

1. On or about April 29, 2019, ASANE drove his silver Mercedes-Benz to the Dunkin Donuts Restaurant located at Fort Bragg, Cumberland County, North Carolina, to meet with UC1. At the meeting, ASANE told UC1 that he arranges marriages between soldiers and aliens, boasting that he had a one-hundred percent success rate. ASANE explained to UC1 how the immigration process would work and what UC1 was required to do. ASANE told UC1 that she would be engaging in a

9

sham marriage to ASANE's "brother" for the purpose of getting his green card. ASANE told UC1 that she could live off post and receive BAH and BAS, in exchange for engaging in the fraudulent marriage to ASANE's "brother." ASANE told UC1 that ASANE's "brother" would pay for fifty to seventy percent of the rent, utilities and furniture for her apartment. ASANE told UC1 that if she was able to be deployed overseas ASANE could "make her big money". ASANE told UC1 that all she needed was a lease from New York, and tell the military that her husband is moving to New York, and she would receive $4,000 per month in BAH plus salary, totaling eight to nine thousand dollars per month.

2. On or about May 16, 2019, S.S.S. flew to Fayetteville, North Carolina. ASANE picked up S.S.S. from the Fayetteville airport in ASANE's silver Mercedes-Benz and drove S.S.S. back to ASANE's home.

3. On or about May 17, 2019, ASANE and S.S.S. drove to the Cumberland County, North Carolina, courthouse in a Dodge Ram Truck.

4. On or about May 17, 2019, UC1 and S.S.S. participated in a civil marriage ceremony and got married in Cumberland County, North Carolina. The marriage ceremony was witnessed by ASANE and another individual known to the Grand Jury. S.S.S. provided UC1 with an envelope containing receipts for the marriage certificate and the Magistrate's fee.

5. On or about May 17, 2019, ASANE took photographs with his cellular telephone with posed photos of S.S.S. and UC1 outside of the Cumberland County Magistrate's Office.

6.     On or about July 9, 2019, ASANE transmitted via cellular phone a "list" to UC1 that included basic questions that were asked during a marriage interview with United States Citizenship and Immigration Services.

7.     On or about July 10, 2019, ASANE drove his silver Mercedes-Benz to the Coffee Scene Coffee Shop, located in Fayetteville, NC and met with UC1 and UC2. At the meeting ASANE told UC1 and UC2 they need to discuss "important things first," "money and the documentation." UC1 and UC2 asked ASANE who UC2 was marrying, his brother or cousin? ASANE told UC1 and UC2 that when he say's "brother" he means most of them are his cousins. ASANE told UC1 and UC2 that once they obtain the leases for the apartments to include the "persons" (meaning the husband) name on the lease "to cover your tracks." ASANE told UC1 and UC2 to start communicating with their sergeants to notify them they are getting married "to make it look more legit." ASANE told UC1 and UC2 that if their command asked where their husbands were from, to not say Ghana or Africa, and to say they are from Jamaica, so "it won't raise eyebrows."

8.     ASANE asked UC1 and UC2 "how much they were looking for? ASANE agreed to pay UC1 and UC2 two thousand dollars in cash to file the paperwork, and when the aliens received their cards they would receive another two thousand dollars each, for a total of $4,000 each. ASANE told UC1 and UC2 that he has helped ten to fifteen people and "they all got their stuff."

9.     On or about August 1, 2019, ASANE, driving ARTHUR and GYASI in his silver Mercedes-Benz, arrived at the Cumberland County courthouse in

11

Fayetteville, North Carolina, and met with UC1 and UC2. ARTHUR and UC2 entered the court house and completed the marriage license application. ARTHUR paid the $60 processing fee.

10. On or about August 1, 2019, ASANE, ARTHUR and GYASI arrived at the Cumberland County Magistrates Office, Fayetteville, North Carolina driving the silver Mercedes-Benz. ASANE, ARTHUR, GYASI, UC1 and UC2 all entered the Magistrate's Office and UC2 and ARTHUR entered into a civil marriage ceremony. GYASI signed as a witness on the Application, License, and Certificate of Marriage in front of the Magistrate.

11. On or about August 1, 2019, ASANE, ARTHUR and GYASI, drove in the silver Mercedes-Benz to El Cazador Restaurant, located in Fayetteville, North Carolina. ASANE gave UC1 and UC2 an envelope containing $4,000 in cash for the first of two payments for their respective marriages to ███ and ARTHUR.

12. On or about September 25, 2019, ASANE, UC1 and UC2 met at the Coffee Scene Coffee Shop, located in Fayetteville, North Carolina. ASANE provided UC1 and UC2 with envelopes that contained the original Ghana passport and birth certificate of ███ and the original Ghana passport and birth certificate of ARTHUR.

All in violation of Title 18, United States Code, Section 371.

### COUNT THREE

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

12

On or about August 1, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, JAMES ERNEST EKOW ARTHUR, did knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws, namely Title 8 United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Section 1325(c).

## COUNT FOUR

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about August 1, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, ERNEST ATTA GYASI, did aid and abet James Ernest Ekow Arthur, to knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws, namely Title 8 United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Sections 1325(c) and 2.

## COUNT FIVE

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

From in or around April of 2019, and continuing through in or around the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants EBENEZER YEBOAH ASANE, a/k/a "Ben," did encourage and induce aliens, namely, S.S.S. and James Ernest Ekow Arthur, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, in violation of Title 8 United States Code, Section 1324(a)(1)(A)(iv).

## COUNT SIX

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about May 16, 2019, in the Eastern District of North Carolina and elsewhere, the defendant EBENEZER YEBOAH ASANE, a/k/a "Ben," knowing and in reckless disregard of the fact that a certain alien, S.S.S., had come to, entered and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation and otherwise in furtherance of such violation of law, in violation of Title 8 United States Code, Section 1324(a)(1)(A)(ii).

## COUNT SEVEN

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

Beginning in or around January 2015, and continuing through on or about the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben," SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga," ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ did

knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit certain offenses against the United States in violation of Title 8, United States Code, Section 1325(c), that is, to knowingly enter into a marriage for the purpose of evading provisions of the immigration laws.

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendants, ASANE, AGYAPONG,

████████████████████████████████████████████████████████

along with others known and unknown to the Grand Jury, to induce United States citizens to enter into sham marriages with foreign-born nationals for the purpose of evading United States immigration laws and obtaining lawful permanent residence status for otherwise inadmissible foreign-born nationals.

15

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants, ASANE, AGYAPONG, ███████████████████████████████████████████████████ and their co-conspirators, sought to accomplish the purpose of the conspiracy included, among other things, the following:

Defendants ASANE and AGYAPONG were best friends and knew each other through the military and were both from Ghana. AGYAPONG engaged in a civil marriage ceremony with ███████

It was further part of the conspiracy that AGYAPONG, and ███████ would prepare and submit immigration applications and supporting documentation on behalf of ███████ to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

Defendant ASANE while a member of the United States military entered into a sham marriage with Defendant ███████ a foreign born national. The purpose of the marriage was to fraudulently qualify ███████ for immigration benefits, including lawful permanent resident status in the United States.

Defendants ASANE, and ███████ solicited and recruited ███ and ███████ (members of the United States military) to engage in sham marriages to foreign nationals and find other soldiers that would be willing to engage in sham marriages in exchange for Basic Allowance for Housing (BAH) to move off post and

United States currency. The foreign born nationals would be eligible for lawful permanent residence through the petition of a United States citizen (the soldier).

Defendant ASANE, induced ███████ a member of the United States military, to enter into a fraudulent marriage with a foreign born national. The purpose of the marriage was to fraudulently qualify ████ for immigration benefits, including lawful permanent resident status in the United States.

It was further part of the conspiracy that ASANE, ██████████████ would prepare and submit immigration applications and supporting documentation on behalf of ████████████ to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

Defendants ASANE, ███████████ induced ████████ a member of the United States military, to enter into a fraudulent marriage with a foreign born national. The purpose of the marriage was to fraudulently qualify █████ for immigration benefits, including lawful permanent resident status in the United States.

It was further part of the conspiracy that ASANE, ████████████ ████████████ would prepare and submit immigration applications and supporting documentation on behalf of █████████████ to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish the purpose and object thereof, the defendants, ASANE, AGYAPONG, █████████████████████ and co-conspirators did commit, and cause to commit, among others, at least one of the following overt acts:

### SHAM MARRIAGE BETWEEN AGYAPONG AND █████████

1. In or around January 2015, AGYAPONG and █████████ agreed to engage in the marriage and on or about January 13, 2015, AGYAPONG and █████████ engaged in a civil marriage ceremony and got married in the Bronx, New York.

2. On or about May 1, 2015, USCIS received a Form I-130 filed by AGYAPONG on behalf of █████████ and a Form I-485 filed by █████████ signed the application on or about April 30, 2015, under penalty of perjury. Accompanying the Form I-485 were supporting documents to include numerous staged photographs of AGYAPONG and █████████.

3. On or about December 21, 2015, AGYAPONG and █████████ were interviewed at the USCIS Office located in New York, New York. Both attested under oath they were married in good faith. As a result of the interview, USCIS approved the I-130 and the Form I-485. █████████ was granted conditional resident status in the United States.

4. On or about November 7, 2017, USCIS received a Form I-751 filed by AGYAPONG and █████████ttesting they were married in good faith and requesting █████████removal of conditions on her resident status. On January 14, 2019,

18

USCIS approved the application and ████████ was granted permanent resident status.

### SHAM MARRIAGE BETWEEN ASANE AND ████████

5.  In or around March of 2017, ASANE discussed with Individual A.M.L. that he was getting married and asked A.M.L. if she would attend.

6.  On March 30, 2017, A.M.L. and J.L.T. ████████ attended the sham marriage of ASANE and ████████ in Cumberland County, North Carolina. ASANE and ████████ engaged in a civil marriage ceremony and got married in Cumberland County, North Carolina. A.M.L. and J.L.T. ████████ ████████ signed the marriage license as witnesses.

7.  On or about March 30, 2017, ASANE and ████████ took staged photographs of the marriage. Later that same day, ASANE, ████████ A.M.L. and J.L.T. travelled to ASANE's residence and took more staged photographs, and signed papers.

8.  On or about March 30, 2017, while at the residence of ASANE, ASANE told A.M.L. that he was getting married to ████████ to help her get her citizenship, and that he could get his BAH increased because ████████ resided in ████████.

9.  On July 26, 2017, ████████ was issued a United States Uniformed Services card (Identification and Privilege Card) based on the marriage and sponsorship of ASANE. As a result of being issued the card, ████████ was entitled to Tri-Care, access to the commissary, and to the base.

19

10.   On or about September 1, 2017, USCIS received a Form I-130 filed by ASANE on behalf of ████████████ and a Form I-485 filed by ████████████ ████████████ signed the application on or about July 26, 2017, under penalty of perjury. Accompanying the Form I-485 were supporting documents to include numerous staged photographs of ASANE and ████████████

11.   On or about November 16, 2017, ASANE and ████████████ were interviewed at the USCIS Office located in Durham, North Carolina. Both attested under oath they were married in good faith. As a result of the interview, USCIS approved the I-130 and the Form I-145. ████████████ was granted conditional resident status in the United States.

12.   On or about August 28, 2019, USCIS received a Form I-751 filed by ASANE and ████████████ attesting they were married in good faith and requesting ████████████ removal of conditions on her resident status.

### ATTEMPTED SHAM MARRIAGE

13.   Beginning in or around July 2018, and continuing to in or around December 2018, ASANE in the presence of AGYAPONG solicited S.T.H., an individual known to the Grand Jury, to marry his "cousin".

14.   ASANE told S.T.H. to "put a price on it", meaning what is it going to cost to marry my cousin? She told ASANE she wanted $3,600. ASANE agreed.

15.   Shortly thereafter, S.T.H. and AGYAPONG were travelling together on Fort Bragg as part of their duties when AGYAPONG stopped the vehicle and met with ASANE in the parking lot of a wearhouse. AGYAPONG told S.T.H. that she

20

had to go with ASANE and two other individuals unknown to the Grand Jury. AGYAPONG told S.T.H. that she was to go with ASANE today to get married to one of the individuals in ASANE's vehicle.

### SHAM MARRIAGE BETWEEN █████████████

16.  In or around May 2018, ███████ agreed to engage in a sham marriage to █████ in exchange for approximately $2,000. ███████ received a total of $7,000 from ASANE during the marriage fraud conspiracy.

17.  On or about May 22, 2018, ████████████████ engaged in a civil marriage ceremony and got married in Cumberland County, North Carolina.

18.  On July 25, 2018, ███████ was issued a United States Uniformed Services card (Identification and Privilege Card) based on the marriage and sponsorship of ███████ As a result of being issued the card, ███████ was entitled to Tri-Care insurance, access to the commissary, and to the base.

19.  On or about September 5, 2018, USCIS received a Form I-130 filed by ███████ on behalf of ███████ and a Form I-485 filed by ███████ signed the application on September 1, 2018, under penalty of perjury. Accompanying the Form I-485 were supporting documents to include numerous staged photographs of ███████████████

20.  Sometime on or before April 10, 2019, ASANE provided a list to ███████████████ and coached them on how to prepare for the marital interview scheduled to be conducted by USCIS examiners.

21. On or about April 10, 2019, ████ ████ were interviewed at the USCIS Office located in Durham, North Carolina. Both attested under oath they were married in good faith. As a result of the interview, USCIS approved the I-130 and the Form I-485. ████ was granted conditional resident status in the United States.

## SHAM MARRIAGE BETWEEN ████ ████

22. In or around October 2018, ████ approached ████ about an opportunity to make some extra money. ████ asked ████ if he would be interested in getting married to a foreign national; in exchange, ████ could move out of the barracks and collect BAH. ████ that he could not do it because, he was already engaged to someone. ████ ████ ████ if he could help him recruit other soldiers to engage in the sham marriages and he would be compensated for recruiting others.

23. In or around October, 2018, ████ engaged in a conversation and ████ pitched the sham marriage scenario to ████ to see if he was interested and ████ stated he would go through with the sham marriage.

24. In or around the end of October 2018, ████, ████, and ASANE met at the Starbucks restaurant at the Cross Creek Mall, Fayetteville, North Carolina, and discussed the specifics of the sham marriage between ████ and ████.

25. On or about October 29, 2018, ████ and ████ engaged in a civil marriage ceremony during the marriage at the magistrate's office between ████

and ███████, the marriage application and license was witnessed by ███████ ███████ gave $1,200 in cash to ███████ at the Cumberland County courthouse as payment in recruiting ███████ to engage in the marriage to ███████

26.    After the marriage ceremony, ASANE and ███████ instructed ███████ to go to the soldier support center and enter ███████ biographical information into the DEERS system, which would allow ███████ to obtain an Identification card, health care (Tricare) and other benefits. ASANE also, told ███████, he would have to go to USCIS and apply for ███████ citizenship.

27.    Sometime in   October 2018, ASANE paid ███████ approximately $7,000 for his participation in arranging the sham marriage between ███████ and ███████

All in violation of Title 18, United States Code, Section 371.

### COUNT EIGHT

On or about March 30, 2017, in the Eastern District of North Carolina, EBENEZER YEBOAH ASANE a/k/a   "Ben"   and   ███████████████ defendants herein, did knowingly and unlawfully enter into a marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c).

### COUNT NINE

On or about July 26, 2017, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE   a/k/a "Ben", defendant herein, did knowingly present an application required by the immigration laws of the United

States which contained a false statement with respect to a material fact, namely, ASANE falsely stated in Form I-130 that █████████████ and ASANE were married in good faith, when in fact, as ASANE then knew, ASANE had knowingly and unlawfully entered into a marriage with █████████████ for the purpose of evading a provision of the immigration laws, in violation of Title 18, United States Code, Section 1546(a).

## COUNT TEN

On or about July 26, 2017, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE a/k/a "Ben", defendant herein, did knowingly make a false statement under oath, in a case, proceeding, and matter relating to, and under, and by virtue of a law of the United States relating to the naturalization, citizenship, or registry of aliens, that is, ASANE claimed in connection with Form I-130 that he was married in good faith to█████████████ a citizen of the country of Ghana, when in fact, as ASANE then knew, ASANE had knowingly and unlawfully entered into a marriage with █████████████ for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 18, United States Code, Section 1015(a).

## COUNT ELEVEN



24



## COUNT TWELVE



## COUNT THIRTEEN

In or around August 2019, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE a/k/a "Ben," and ████████ ██ ████ defendants herein, did knowingly make under oath, and as permitted under penalty of perjury under Title 28, United States Code, Section 1746, knowingly subscribe as true, a false statement in an application required by the immigration

Case 5:19-cr-00423-FL *SEALED*   Document 122   Filed 04/21/20   Page 25 of 32

Case 5:19-cr-00423-FL   Document 171   Filed 06/15/20   Page 25 of 32

laws of the United States, and did present such application, which contained a false statement with respect to a material fact, that is, ASANE and ████████████ falsely stated in Form I-751 that ASANE and ████████ were married in good faith, when in fact, as they then knew, ASANE and ████████ had knowingly and unlawfully entered into a marriage for the purpose of evading a provision of the immigration laws, in violation of Title 18, United States Code, Section 1546(a).

## COUNT FOURTEEN

From in or around March 2017, to on or about August 30, 2019, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE a/k/a "Ben," and ████████████████ defendants herein, did knowingly make a false statement under oath, in a case, proceeding, and matter relating to, and under, and by virtue of a law of the United States relating to the naturalization, citizenship, or registry of aliens, namely, ASANE and ████████████ claimed in connection with Form I-751 that they were married in good faith, when in fact, as they then knew, ASANE and ████████████████ had knowingly and unlawfully entered into a marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 18 United States Code, Section 1015(a).

## COUNT FIFTEEN

████████████████████████████████████████

## COUNT SIXTEEN



## COUNT SEVENTEEN

27

## COUNT EIGHTEEN



## COUNT NINETEEN



Case 5:19-cr-00423-FL *SEALED*   Document 122   Filed 04/21/20   Page 28 of 32

Case 5:19-cr-00423-FL   Document 171   Filed 06/15/20   Page 28 of 32

## COUNT TWENTY

## COUNT TWENTY ONE

From in or around January 2015, and continuing through in or around the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendant EBENEZER YEBOAH ASANE, a/k/a "Ben," did encourage and induce aliens, namely,                                                                    and

to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, in violation of Title 8 United States Code, Section 1324(a)(1)(A)(iv).

## COUNT TWENTY TWO

Beginning in or around January 2015 and continuing through January 2020, in the Eastern District of North Carolina and elsewhere, the defendant SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga" and "A.G.," willfully and knowingly did embezzle, steal, purloin, and convert to defendant's use money, of a value exceeding $1,000, property of the United States, in violation of Title 18, United States Code, Section 641.

29

## COUNT TWENTY THREE

On or about February 12, 2019, in the Eastern District of North Carolina, the defendant, SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga" and "A.G.," did corruptly attempt to obstruct, influence, and impede *United States v. Ebenezer Yeboah Asane*, Criminal Case 5:19-CR-423, an official proceeding, by trying to destroy his cellular phone which contained recent marriage fraud related texts, in violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT TWENTY FOUR

On or about Janaury 12, 2020, in Cumberland County, in the Eastern District of North Carolina. Defendant, SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga" and "A.G.," did knowingly, attempt to corruptly persuade███, an individual known to the Grand Jury, by telling███ not to divulge the true relationship between defendant and███ with the intent to influence███ testimony in *United States v. Ebenezer Yeboah Asane*, Criminal Case 5:19-CR-423, an official proceeding, in violation of Title 18, United States Code Section 1512(b)(1).

## COUNT TWENTY FIVE

On or about January 14, 2020, in Cumberland County, in the Eastern District of North Carolina. Defendant, SAMUEL MANU AGYAPONG, a/k/a "Samray Tuga" and "A.G.," did knowingly, attempt to corruptly persuade an individual known to the Grand Jury,███, to conceal and destroy text messages and other contents on her cellular phone, with the intent to impair the objects' availability for use in *United*

30

*States v. Ebenezer Yeboah Asane*, Criminal Case 5:19-CR-423, an official proceeding, in violation of Title 18, United States Code Section 1512(b)(2)(B).

## FORFEITURE ALLEGATION

Each named defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of one or more of the offense(s) set forth in Count(s) Three, Five or Six, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6) –

(1) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the said offense(s); and

(2) any property, real or personal, that constitutes, or is derived from or traceable to the proceeds obtained directly or indirectly from the commission of the said offense(s), or that was used to facilitate, or intended to be used to facilitate, the commission of the said offense(s).

The forfeitable property includes, but is not limited to:

(a)     The gross proceeds personally obtained by defendant ASANE in an amount of at least $8,000; and

(b)     2017 Mercedes Benz, silver in color, VIN: WDDZF4JB7HA055943, North Carolina License Plate Number EBX-1614, registered in the name of Ebenezer Yeboah Asane.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant -

31

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third party;

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL
REDACTED VERSION
Pursuant to the E-Government Act and the
federal rules, the unredacted version of
this document has been filed under seal.
FOREPERSON

DATE: ___4/21/2020___

ROBERT J. HIGDON, JR.
United States Attorney

BY: GABRIEL J. DIAZ
Assistant United States Attorney